THE STATE OF NORTH DAKOTA EX REL. ISABELLA HOWIESON, Respondent, v. G. A. FRASER, as the Adjutant General of the State of North Dakota, Appellant.

(208 N. W. 397.)

**Soldier's bonus — decision of adjutant held not subject to review; action of adjutant general in refusing claim for soldier's bonus not controlled by mandamus.**

The laws of this state which provide for the payment of what is commonly denominated a "soldier's bonus" vest the adjutant general with power to pass upon all claims for compensation out of the returned soldier's fund; and such laws make no provision for an appeal from, or a judicial review of, the decisions of the adjutant general in the allowance or rejection of claims. In the instant

---

Note.—As to construction and effect of soldier's bounty Laws, see annotation in 13 A.L.R. 574.

For construction and effect of soldier's bounty laws enacted during or after the world war, see annotation in 35 A.L.R. 791.

case the adjutant general refused to allow a claim for compensation out of the returned soldier's fund. It is *held* that this decision is not subject to judicial review and that the action of the adjutant general may not be controlled by mandamus.

Opinion filed March 24, 1926.

Bounties, 9 C. J. § 32a p. 311 n. 43 New.

Appeal from the District Court of Grand Forks County, *Cooley, J.* Application by the State on the relation of Isabella Howieson for mandamus, against G. A. Fraser, as the Adjutant General of the State of North Dakota.

From an order granting a peremptory writ the defendant appeals. Reversed.

*Geo. F. Shafer,* Attorney General and *John Thorpe,* Assistant Attorney General, for appellant.

It was not the purpose of our legislature to penalize a widow in case of her remarriage, and such would be the result if the construction of the word "widow" contended for by the appellant were adopted. Mathews v. Marsden, 230 Pac. 775.

No pensioner has a vested legal right to his pension. Pensions are the bounties of the government, which Congress has the right to give, withhold, distribute or recall at its discretion. United States v. Teller, 27 L. ed. 352.

*J. B. Wineman,* for respondent.

A widow is an "unmarried woman" within the meaning of Rev. Stat. art. 3, title 1, chap. 6, providing that a will executed by an unmarried woman shall be deemed revoked by her subsequent marriage. Re Kaufman, 61 Hun, 331, 16 N. Y. Supp. 113, affirmed in 131 N. Y. 620, 15 L.R.A. 292, 30 N. E. 242.

Bounties are but a mode of compensation for services, and may be either for past or as an inducement to future service. Their purpose is to strengthen the military power, not to weaken it; to commend the service to public opinion, and induce men to enter it. Cass Twp. v. Dillon, 16 Ohio St. 38.

A bonus is a reward for past military services, payable at once; a

pension such a reward, payable in instalments. People v. Winchester Nat. Bank, 231 N. Y. 465.

CHRISTIANSON, Ch. J. Plaintiff applied to the district court of Grand Forks county for a writ of mandamus to compel the defendant to approve and voucher the claim of the relator for payment out of the "returned soldier's fund." The petition for the writ alleges that the relator, Isabella Howieson, is the mother of John Alexander Bonnett, who was mustered into the military service of the United States at Grand Forks, North Dakota, on July 15th, 1917, and was killed in action with the American Expeditionary Forces in France on October 9th, 1918, leaving surviving him his mother (the relator), his wife, Ellen Bonnett, and a minor child; that within a year after the death of said John Alexander Bonnett said minor child died; and that thereafter on May 5th, 1919, his widow, Ellen Bonnett, remarried. It is further alleged that the said surviving wife of said John Alexander Bonnett has at no time made application to the Adjutant General for payment of a "bonus" under the returned "Soldier's Fund Act;" that the relator has "made due demand upon said defendant as the adjutant general of the state of North Dakota, for the payment of her claim against the returned soldier's fund, as the dependent mother of said deceased soldier, but that said defendant has refused to pay the same or to approve and voucher her claim, alleging that under the law there is a question as to whether the relator is entitled to said payment, or the former widow of said deceased soldier." The defendant demurred to the petition on the ground that the same does not state facts sufficient to constitute a cause of action or to justify the issuance of a peremptory writ of mandamus. The demurrer was overruled. The court thereupon made findings of fact and conclusions of law in favor of the plaintiff and a peremptory writ of mandamus was issued commanding the defendant to "forthwith approve and voucher the claim of said Isabella Howieson, for payment from the returned soldier's fund." The defendant has appealed from the judgment so entered.

In our opinion the petition for the writ of mandamus failed to state facts justifying any judicial relief, whatever, and the demurrer should have been sustained.

The Soldier's Bonus Act (Laws 1921, chap. 103) provides:

"Sec. 1. There shall be levied upon each dollar of assessed valuation of all taxable property within this state for the year 1921, and every year thereafter, to be paid during said years, one mill, and all such revenues including interest and penalties, as may be collected thereby shall be paid into a special fund to be known as the 'returned soldier's fund,' which fund shall be paid to returned soldiers as compensation; . . ."

"Sec. 3. Any returned soldier, as hereinafter defined, upon proof thereof to the satisfaction of the adjutant general of the state of North Dakota, and after application in such form as the adjutant general may prescribe herefor, shall be entitled to receive from said fund twenty-five dollars per month for each and every month or fraction thereof, as computed by the federal government in like instances, that any such returned soldier was engaged in the service of the United States in the present war; but such computed time shall not commence at a date prior to the declaration of war by the United States nor continue longer than November 1, 1919, except as to soldiers who prior to the signing of the armistice were sent to Russia and are still in the service under such original enlistment, for the purposes defined and enumerated in Section 1 of this Act. Payments shall be made in one payment from such fund to such returned soldiers in the order in which their applications are received, filed and approved, out of any funds available therefor, on vouchers issued by the Adjutant General, and approved by the State Auditing Board provided, that in the case of the death of any soldier while in service or before his application has been received, approved and paid, the said payment so shown to be due shall be payable to an orphan child or the orphan children, under lawful age, or to the widow, or to the mother or to the father if reasonably in need of same, of the deceased soldier, in the order named; provided further, that the Adjutant General, with the consent of the industrial commission, may in his discretion give priority to claims under this Act. No proceedings in county court shall be required to establish the relationship of either the children, wife, mother or father, but all such claims shall be presented to the Adjutant General, and when such relationship has been established to his satisfaction he may allow such claims and they shall then be paid in accordance with the

provisions of this Act without further procedure; provided, further, that no payments shall be made under the provisions of this Act, save for the time spent in active service, and provided, further, that the compensation paid under this Act shall be used within the state of North Dakota only, unless the said adjutant general, under the direction and consent of the industrial commission, shall direct otherwise; provided, further, that when it shall be made to appear to the adjutant general that any such returned soldier shall have deserted his wife or minor children and when no divorce shall have been granted, then the amount to which such returned soldier shall be entitled, under the provisions of this Act may be paid to such wife and minor children.

"Sec. 4. The adjutant general of the state of North Dakota, under the supervision of the industrial commission, shall have charge and supervision of all such payments and the carrying out of the provisions of this Act. The adjutant general is hereby authorized and empowered to adopt and establish all rules and regulations necessary for the purpose of carrying out the provisions of this act."

It will be noted that the "returned soldier's fund" is a fund raised by general taxation, to be disbursed to returned soldiers, or to the survivors of deceased returned soldiers. The adjutant general is charged with the duty of administering the act, and he is empowered to pass upon all claims presented against the fund. He is appointed by the law to ascertain the facts and to adjudicate and allow compensation to the persons entitled thereto. No provision is made for an appeal from, or a judicial review of, the decisions of the adjutant general in the allowance or rejection of claims for compensation. The only body that is given any power to supervise any act performed by the adjutant general under the returned soldier's act is the industrial commission. Whether that body has authority to review or control the acts of the adjutant general in the allowance or rejection of claims is not involved in this proceeding. Here it is sought to review these acts in a court, and to control them by mandamus. This may not be done. Decatur v. Paulding, 14 Pet. 497, 10 L. ed. 559; United States ex rel. Dunlap v. Black, 128 U. S. 40, 32 L. ed. 354, 9 Sup. Ct. Rep. 12; Lochren v. United States, 6 App. D. C. 486; Stokely v. De Camp, 2 Grant, Cas. 17. See also Wirtz v. Nestos, 51 N. D. 603, 200 N. W. 524.

53 N. Dak.—58.

In Decatur v. Paulding, supra, the material facts were as follows: On the 3rd day of March, 1837, Congress passed an act giving to the widow of any officer who had died in the naval service a pension equal to half of his monthly payment from the time of his death until her death or marriage. On the same day Congress passed a resolution granting a pension to Mrs. Decatur, widow of Stephen Decatur, for five years, commencing June 30th, 1834, and the arrearages of the half pay of a post captain from Commodore Decatur's death to the 30th of June, 1834. Mrs. Decatur applied for and received her pension under the general law, with a reservation of her rights under the resolution, claiming the pension granted by that also. The Secretary of the Navy, acting under the opinion of the attorney general, decided that she could not have both. Thereupon she applied to the circuit court of the United States for the District of Columbia for a writ of mandamus to compel the Secretary to comply with the resolution in her favor. The writ was refused. The decision of the circuit court was affirmed by the Supreme Court of the United States in an opinion, delivered by Chief Justice Taney, from which we quote: "The duty required by the resolution was to be performed by him (The Secretary of the Navy) as the head of one of the executive departments of the government, in the ordinary discharge of his official duties. In general, such duties, whether imposed by act of Congress or by resolution, are not mere ministerial duties. The head of an executive department of the government, in the administration of the various and important concerns of his office, is continually required to exercise judgment and discretion. He must exercise his judgment in expounding the laws and resolutions of Congress, under which he is from time to time required to act. If he doubts, he has a right to call on the Attorney General to assist him with his counsel; and it would be difficult to imagine why a legal adviser was provided by law for the heads of the departments, as well as for the President, unless their duties were regarded as executive, in which judgment and discretion were to be exercised."

"If a suit should come before this court, which involved the construction of any of these laws, the court certainly would not be bound to adopt the construction given by the head of a department. And if they supposed his decision to be wrong, they would, of course, so

pronounce their judgment. But their judgment upon the construction of a law must be given in a case in which they have jurisdiction, and in which it is their duty to interpret the act of Congress, in order to ascertain the rights of the parties in the cause before them. The court could not entertain an appeal from the decision of one of the secretaries, nor revise his judgment in any case where the law authorized him to exercise discretion or judgment. Nor can it by mandamus act directly upon the officer, and guide and control his judgment or discretion in the matters committed to his care, in the ordinary discharge of his official duties. The case before us illustrates these principles and shows the difference between executive and ministerial acts."

In United States ex rel. Dunlap v. Black, 128 U. S. 40, 32 L. ed. 354, 9 Sup. Ct. Rep. 12, one Dunlap applied to the commissioner of pensions for an increase in pension, which it was claimed the applicant was entitled to receive under an act of Congress. The commissioner of pensions rejected the application on the ground that the applicant did not come within the terms of the act. The applicant thereupon applied to the Supreme Court of the District of Columbia for a writ of mandamus to compel the Commissioner of Pensions to reissue a pension certificate to the applicant, granting him the increase in pension which he claimed to be entitled to receive under the act of Congress. The writ of mandamus was refused. The case came before the United States Supreme Court on a writ of error, and the decision of the lower court was affirmed. In the opinion in the Dunlap Case, the United States Supreme Court quoted with approval the language from Decatur v. Paulding, which we have quoted above, and said that this decision "laid down the law in terms that have never been departed from." 128 U. S. 47. In commenting upon the principle of law announced in Decatur v. Paulding, and its applicability to the case then under consideration, the court said:

"The court will not interfere by mandamus with the executive officers of the government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose; but when they refuse to act in a case at all, or when, by special statute, or otherwise, a mere ministerial duty is imposed upon them, that is, a service which they

are bound to perform without further question, then, if they refuse, a mandamus may be issued to compel them.

"Judged by this rule the present case presents no difficulty. The Commissioner of Pensions did not refuse to act or decide. He did act and decide. He adopted an interpretation of the law adverse to the relator, and his decision was confirmed by the Secretary of the Interior, as evidenced by his signature of the certificate. Whether if the law were properly before us for consideration, we should be of the same opinion, or of a different opinion, is of no consequence in the decision of this case. We have no appellate power over the Commissioner, and no right to review his decision. That decision and his action taken thereon were made and done in the exercise of his official functions. They were by no means merely ministerial acts."

The language and reasoning of the United States Supreme Court in these cases is directly applicable to, and decisive of, the case at bar.

The judgment appealed from is reversed and the cause remanded with directions to dismiss the proceeding.

BIRDZELL, NUESSLE, JOHNSON, and BURKE, JJ., concur.