STANDARD OIL COMPANY OF INDIANA, a Corporation, Appellant, v. A. W. ENGEL, H. A. Fischer, S. G. Severtson, A. G. Sorlie, C. R. Green, as Members of and Constituting the Depositors' Guaranty Fund Commission of the State of North Dakota, Respondents.

(212 N. W. 822.)

**Banks and banking — power of guaranty fund commission.**

1. The Guaranty Fund Act, chapter 126, Sess. Laws 1917, amended and re-enacted as chapter 200, Sess. Laws 1923, providing for the creation and administration of the depositors' guaranty fund for the purpose of insuring the repayment of deposits made in banks chartered and from time to time inspected and examined by state authority, reposes in the guaranty fund commission the power to pass upon and finally allow or reject the claims of alleged depositors against the fund.

**Banks and banking — due process of law.**

2. The Guaranty Fund Act empowering the guaranty fund commission to pass upon and finally allow or reject claims of alleged depositors against the guaranty fund is not subject to the objection that it is unconstitutional in that it deprives claimants against the fund of their property without due process of law, vests judicial power in the commission, an administrative board, and denies to claimants the right to their day in court.

**Mandamus — does not lie against guaranty fund commission.**

3. The guaranty fund commission exercises legal discretion and judgment in passing upon claims against the guaranty fund, and mandamus will not lie to control or direct the action of the commission in passing upon the validity of such claims.

Opinion filed March 15, 1927.

Banks and Banking, 7 C. J. § 15 p. 485 n. 79 New, 82 New. Mandamus, 38 C. J. § 199 p. 659 n. 38; § 404 p. 765 n. 97.

Appeal from the District Court of Burleigh County, *Jansonius,* J. Affirmed.

*O'Hare, Cox & Cox,* for appellant.

Annotation.—(2) Constitutionality of Guaranty Fund Act, see 3 R. C. L. 382; 1 R. C. L. Supp. 816.

(3) Official discretion not subject to control by mandamus, see 18 R. C. L. 124; 3 R. C. L. Supp. 786; 4 R. C. L. Supp. 1178; 5 R. C. L. Supp. 974; 6 R. C. L. Supp. 1054.

"All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter, and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker; and the latter in consideration of the loan of the money and the right to use it for his own profit agrees to refund the same amount or any part thereof on demand." Marine Bank v. Fulton Bank, 2 Wall. 256.

"A depositor . . . may . . . maintain an action in the proper form . . . to require the commission to perform a legal duty. . . . The rule . . . is equally well established that a clear duty not involving the exercise of discretion may be enforced when performance is arbitrarily refused." Wirtz v. Nestos, 51 N. D. 603, 200 N. W. 524.

"A limitation of the rule is that mandamus lies to review the acts of officers or boards where it clearly appears that they have acted arbitrarily and unjustly in abuse of the discretion vested in them." 38 C. J. 659.

"Nor will mandamus lie to review or control the acts of boards in respect of which they are vested with discretion, unless bad faith or dereliction of duty, or the adoption of a fundamentally wrong principle of assessment clearly appears." State v. State Board (Mont.) 185 Pac. 708.

*George F. Shafer,* Attorney General, and *John Thorpe,* Assistant Attorney General, for respondents.

As a general rule mandamus will not lie to control official discretion, that is, where an officer has been clothed with discretion in the determination of the matter properly before him, mandamus may not be used to compel him to use such discretion in any particular manner. Oliver v. Wilson, 8 N. D. 590, 80 N. W. 757; State v. Albright, 11 N. D. 22, 88 N. W. 729.

"The writ of mandamus cannot be used to compel the court below to decide a matter before it in a particular way, or to review its judicial action had in the exercise of legitimate jurisdiction. The writ cannot be used to perform the office of an appeal or writ of error, even if no appeal or writ of error is given by law." Re Rice, 36 L. ed. 198.

"A subordinate body can be directed to act, but not how to act, in a matter as to which it has the right to exercise its judgment." People ex rel. Francis v. Troy, 78 N. Y. 33, 34 Am. Rep. 500.

*Newton, Dullam & Young,* amici curiæ.

"A public officer or inferior tribunal may be guilty of so gross an abuse of discretion or such evasion of positive duty as to amount to a virtual refusal to perform the duties enjoined, or to act at all in contemplation of law; in such case mandamus will afford a remedy." State Dental Examiners v. People, 123 Ill. 227, 13 N. E. 201.

"If an official duty is to be performed on the happening of an event, the officer cannot arbitrarily or capriciously refuse to perform it after the event has happened on the plea that he is not satisfied that it has happened. If the fact exists and it is established by sufficient proofs, it is his legal duty to be satisfied and to act accordingly." Stockton & V. R. Co. v. Stockton, 51 Cal. 328.

NUESSLE, J. The plaintiff petitioned the district court of Burleigh county for a writ of mandamus to coerce the defendants the depositors' guaranty fund commission of the state of North Dakota to allow its claims as a depositor in insolvent closed banks against the guaranty fund. The court issued an alternative writ. On the return day the defendants appeared and moved to quash the writ and dismiss the action on the ground that the court had no jurisdiction of the defendants or of the subject matter and that the petition did not set out facts sufficient to warrant the court in issuing the writ. The court sustained the demurrer, granted the motion to quash, vacated the alternative writ and ordered judgment dismissing the action. This appeal is from the order so made.

In 1917 the legislature enacted the Guaranty Fund Act. See chapter 126, Session Laws of 1917. This act was amended and re-enacted as chapter 200, Session Laws of 1923. The latter chapter is the enactment more particularly requiring consideration on the instant appeal. Under the terms of the act provision is made for the creation and administration of a fund (depositors' guaranty fund) for the purpose of insuring the repayment of deposits made in banks chartered and from time to time inspected and examined by state authority. The act establishes a commission (depositors' guaranty fund commis-

sion) whose duties are to inspect, examine and pass upon the qualifications of the various banks whose deposits are to be thus insured; to assess, collect and conserve the guaranty fund; to pass upon and allow or reject claims of depositors demanding the right to participate in the fund and to disburse such fund; and generally, to administer the provisions of the act and perform such functions as may be requisite to the attainment of its purposes. Specifically, the act provides that "Said commission shall have the supervision and control of the depositors' guaranty fund and shall have power to adopt all necessary rules and regulations not inconsistent with law for the management and administration of said fund." The act also expressly empowers the commission to make rules and regulations and prescribe the manner in which claims against the fund shall be established and to provide for and hold hearings at which the merits of the respective claims may be determined and the alleged deposits *finally* rejected or allowed as guaranteed. Thus the act confers wide and comprehensive powers upon the commission. No provision is made for appeal from its decisions. The commission consists of five members; the governor of the state, the manager of the Bank of North Dakota and three members to be appointed by the governor. The governor is chairman of the commission and the attorney general of the state ex officio its attorney. All members except the governor must have had at least five years' experience in the management of some bank or banks located within the state of North Dakota. The defendants, Engel, Fischer and Severtson, members of the commission appointed by the governor, are all stockholders and officers of state banks insured under the guaranty act and contributors in the establishment and maintenance of the guaranty fund.

The plaintiff, the Standard Oil Company, is engaged in the business of distributing and selling petroleum products. It maintains distributing and service stations at various points in the state of North Dakota. It transacted business with various of the state banks whose deposits were guaranteed under the terms of the Guaranty Fund Act. Certain of these banks failed and are now in the hands of the receiver of closed banks. The plaintiff claimed to be a depositor in such banks. The commission in conformity with the act examined and audited the deposits in the banks and rejected the alleged deposits of the plaintiff.

Plaintiff thereupon demanded a hearing before the commission at which it might establish its claims. The demand was granted and hearings were held pursuant thereto. Evidence was offered in support of plaintiff's claims, and the commission on this evidence again rejected the deposits. Whereupon plaintiff brought the instant action claiming that its rights as a depositor were defined by the Acts and that the action of the commission in rejecting the deposits was fraudulent, arbitrary, capricious and illegal, and in violation of the plain statutory duty of the commission to approve and allow the same.

In its petition for the writ presented to the district court, plaintiff set out the facts as above stated and attached to and made a part of its petition the transcripts of the testimony taken at the various hearings held by the commission and on which the action of the commission in rejecting and disallowing the deposits were based. Defendants challenge the right of the petitioner to the issuance of the writ on the grounds that the court had no jurisdiction of the defendants or of the subject of the action and that the facts as set out and appearing on the face of the petition, including the transcripts of testimony attached to and made a part thereof, were insufficient to warrant the issuance of the writ, and moved to quash and vacate the same. Thus the challenge of the defendants was in fact a demurrer to the evidence.

Considering the petition, including the transcripts attached thereto, in the light most favorable to the plaintiff, we think that it fairly establishes the following matters of fact in addition to those hereinbefore set out: That is, that the plaintiff maintains its principal office at Fargo. It has local distributing and service stations throughout the state. In order to facilitate its business and the better to enable it to keep a check on its distributing agents, plaintiff made a practice of arranging with banks at points where its agents were located, to handle the funds that should come into the hands of such agents in carrying on the business. The course of business followed in this respect was that each day, or as often as the local distributing agent saw fit to do so, he would go to the bank with his collections, whether cash, checks or drafts, and place the same therein, taking therefor an order upon the bank for the amount thereof payable to the plaintiff. The agent had no authority to and did not cash such orders but transmitted them as received to the plaintiff's head office at Fargo. That office in

the course of its business and usually each day endorsed the orders and deposited them in its bank at Fargo, whence they were transmitted for collection in the usual course to the banks of issue. The time ordinarily elapsing between the date of issue and the return of the instrument varied from three to seven days. In some instances, however, the orders were not paid when presented and the funds piled up and remained in the banks for some time. It was the practice of the bank when an agent left his collections therein and procured an order, to enter the amount thereof on its books as a deposit to the credit of the plaintiff, and when the orders were returned the plaintiff's account was charged with the amount thereof. No checks were or could be drawn against such credits. Under the terms of the Guaranty Fund Acts, the various banks were required on the 30th day of June of each year to make and file with the commission a statement in writing showing the average daily deposits therein for the preceding twelve months. The banks in computing the average daily deposits for these statements included the amounts so credited to the accounts of the plaintiff, and paid the assessments to the Guaranty Fund based upon the statements so made. So in determining and paying the guaranty fund assessments these credits were reckoned as deposits insurable and insured under the Fund. When the banks involved in this litigation failed and went into receivership the total of the amounts credited to the plaintiff therein was about $10,000.

On the facts as thus established the commission held that these transactions did not result in deposits and that there was at no time any intent on the part of the plaintiff to deposit its funds in the several banks; that the procedure followed was adopted as a convenient means of transferring plaintiff's funds to Fargo and that the instruments issued by the several banks to the agents of the plaintiff were in fact merely drafts or cashiers' checks for the transmission of funds. Accordingly it rejected the alleged deposits.

On this appeal plaintiff contends that there is no dispute as to the facts; that on the undisputed facts it was a depositor within the contemplation of the Guaranty Fund Act; that the duty of the commission with respect to its claims was therefore purely ministerial; that the action of the commission in rejecting and allowing the claims was fraudulent, arbitrary, capricious and unreasonable; that such action

resulted in depriving plaintiff of its property without due process of law and in violation of the provisions of the state and federal constitutions; that no appeal lies from the action of the commission in rejecting claims and, therefore, it has no plain, speedy and adequate remedy in the ordinary course of law. On the other hand, the defendants maintain that the petition does not state facts sufficient to warrant the issuance of a writ of mandamus; that the action is in fact an action against the state of North Dakota and that the consent of the state has not been secured to the bringing of the same, and so the court has no jurisdiction of the defendants or of the subject of the action; that under the Guaranty Fund Act defendants are charged with executive duties and that they performed their duties thereunder with respect to the plaintiff in passing upon and rejecting its claims; that the performance of these duties requires an investigation of facts and the exercise of discretion and judgment; that the legislature intended to and did make the decision of the commission final as to the allowance or rejection of claims against the guaranty fund; that though the writ of mandamus might issue to compel the commission to act in the performance of a duty, nevertheless it will not issue to control the exercise of the discretion of the commission in so acting; that in the instant case the commission did act and, acting, exercised its discretion and that its determination was final and cannot be controlled by the court; that to hold otherwise would result in substituting the judgment of the court for the judgment of the commission.

In Wirtz v. Nestos, 51 N. D. 603, 200 N. W. 524, this court had occasion to consider the Guaranty Fund Acts. In that case was held that the guaranty fund is a public fund created through the exercise of the taxing power for a public or governmental purpose, controlled by a state agency in the public's behalf, and in which the state has at least a possessory interest in order to carry out the legislative policy and accomplish the purposes of the act; that the rights of depositors as claimants against the fund are not contractual and that the state has not consented that suit may be brought against it by depositors to establish their claims against the fund; that the guaranty fund commission is an agency of the state charged with executive duties in the administration of the act; that in the execution of these duties the commission must exercise legal discretion and judgment in passing

upon claims against the fund and determining whether they are valid and legal; that such discretion cannot be controlled or directed by the courts; but that the commission may be coerced to perform an official duty not involving the exercise of discretion when the performance thereof is fraudulently or arbitrarily refused.

Incidentally to the questions directly involved in that case we further held that no provision was made for appeal from decisions of the guaranty fund commission in rejecting or allowing deposits and that such decisions are final and conclusive. In view of the fact that in one of the cases argued and submitted with the instant case, this, among other holdings in the Wirtz Case, was challenged, we have again carefully considered the matter. Certainly, nothing can be found in the act expressly giving the right of appeal from decisions of the commission. If such right can be spelled out of the act it is only by implication. Both the history of the 1923 act and the wording of that and the original act negative any intention to confer the right of appeal. When the legislature convened in 1923 the original act had been in effect for nearly six years. The commission had been appointed and was functioning thereunder. There had been numerous bank failures. Many difficulties had been encountered in the administration of the fund. The matter was one of great public concern. In January, 1923, the legislature by joint resolution requested a report of the activities of the commission in administering the fund. The commission in response to this request filed a report stating its conclusions as to the practical operation of the act and detailing some of the problems and difficulties encountered and, among other things, said: "The situation is now that by reason of the many features referred to herein neither the banking board nor the guaranty fund commission can properly function, and an immediate and thorough consideration at your hands is necessary." Continuing, the report summarized the conditions met with and set forth some of the questions that the commission desired to be answered. Among others was this query: "Is the commission's ruling final as to whether a deposit is guaranteed or not?" See Senate Journal for January 19th, 1923, pages 4 to 10 inclusive. Thereafter the legislature enacted chapter 200, Sess. Laws 1923, the Guaranty Fund Act now in effect. So it seems clear that the legislature in the enactment of chapter 200 had in mind and was attempting to remedy

the defects referred to by the commission and to make certain those matters which had been pointed out as uncertain in the original act. The original act did not provide for an appeal from decisions of the commission or of the bank examiner, a member thereof charged with the duty of determining what deposits were guaranteed. Nor did it contain any word as to the finality of those decisions. Neither was there any provision made for a hearing at which claims might be established. On the other hand, the 1923 act requires that when a bank becomes insolvent the commission shall make an examination and audit of its deposits and determine those guaranteed, and further provides: "The action of the commission in certifying acceptance or rejection as herein provided (on audit and without hearing) shall be final unless within ninety days from date of mailing notice of rejection, written demand for hearing is served upon the secretary of the commission." See section 17. Sections 18 and 19 provide for the holding of hearings before the commission when demanded. Section 20 provides: "At any hearing where testimony is taken the commission or its referee shall have authority to administer oaths and may require a stenographic report to be taken and transcribed or the testimony reduced to writing and subscribed by the witness. The commission shall after hearing upon such rejected claims enter their determination whether such rejected deposits shall be *finally* rejected or allowed as guaranteed." Under Section 4 of both the original and the amended acts, it is made the duty of the commission to pass upon the qualifications of banks for admission under the fund. This section unequivocally provides that the decision of the commission in that respect shall be final. Reading the whole act as the same now stands we cannot escape the conclusion that the legislature intended the action of the commission, where called upon to make decisions, to be final. In determining this question consideration must also be given to the character of the commission and the duties to be performed by it. The primary duties imposed upon it are executive in character. The chairman is the chief executive of the state. The remaining members of the commission are appointed by him as governor of the state. The attorney general is its legal advisor. Thus the membership is such that the legislature might well deem it expedient to entrust to the commission the most important duties both executive and quasi judicial and that its actions should not be

subjected to judicial review. There are practical reasons as well for
the adoption of such a policy. As said by Judge Johnson in the case
of Wirtz v. Nestos, 51 N. D. 603, 200 N. W. 524:

"A word may be added with respect to the practical consequences of
a holding that the commission is subject to suit. As observed by the
Supreme Court of the United States in Lankford v. Platte Iron Works
Co. 235 U. S. 461, 59 L. ed. 316, 35 Sup. Ct. Rep. 173, the scheme
of the act 'may be embarrassed if not defeated by subjecting the bank-
ing board to incessant judicial inquiries as to its administration.' The
record gives a hint of what may develop. Some twenty lawsuits are
already pending, others may be, doubtless are, brewing; thousands of
claimants—potential litigants—are involved. The time and funds
of the commission would be consumed in litigation. Doubtless this
powerful consideration influenced the legislature in giving ample
opportunity for hearing before the commission, but without ap-
peal from its decisions. In government and public administration,
someone must be entrusted with power of final decision. Under the
facts here, the commission may make final decisions without encroach-
ing on the judicial function. See Luther v. Borden, 7 How. 1, 12 L.
ed. 581; Den ex dem. Murray v. Hoboken Land & Improv. Co. 18
How. 272, 15 L. ed. 372. The presumption is that these officials, like
judicial and other officers, will do their duty faithfully, impartially
and honestly."

It is now contended that thus construed the guaranty fund commis-
sion is unconstitutional and void. The particular objections urged are
that it deprives the plaintiff of its property without due process of law
contrary to the guaranties of the federal and state constitutions, and
further that it contravenes the provisions of the state constitution in
that it vests judicial power in the guaranty fund commission, an ad-
ministrative board, and denies to the plaintiff the right to its day in
court. In this connection the plaintiff insists on the one hand that the
depositors have built up the guaranty fund by contributions of their
own property and so it belongs of right to them. This, however, is
not the case. The fund was created and is maintained by the state
in the exercise of the police power through exactions from the banks
analogous to special assessments. It may be true that the theory is that
the banks will be benefited and recompensed through greater deposits

on account of greater safety to the depositors but, even so, the exactions going to make up the fund are paid by the banks and not by the depositors. While the act provides that the Guaranty Fund Commission shall fix the rate of interest (not in any case exceeding 6 per cent) that may be paid upon deposits, this likewise is done in the exercise of the police power and will not sustain plaintiff's contention that it results in placing the burden of the exactions upon the depositors. We know of no reason why the state may not wholly forbid banks to pay interest on deposits. See State ex rel. Goodsill v. Woodmansee, 1 N. D. 246, 11 L.R.A. 420, 46 N. W. 970; Noble State Bank v. Haskell, 219 U. S. 104, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062, 31 Sup. Ct. Rep. 186, Ann. Cas. 1912A, 487. On the other hand, it is urged that the majority of the guaranty fund commission are bankers and that they are stockholders in and officials of banks that have contributed to the guaranty fund and are now contributing thereto. The argument is that because of these facts they have a direct personal interest in denying and rejecting claims against the fund; that they are the judge and jury passing upon a controversy in which they have a pecuniary interest. Though all this be so, nevertheless, we think that it does not justify the contentions raised. The legislature created the fund and provided for its administration. It said that the administration thereof should not be subject to judicial review and correction. It prescribed the qualifications that the members of the commission must have in order to be eligible to appointment. It provided that only those who were bankers might be appointed. It must have contemplated that such appointive members would be stockholders in banks contributing to the fund. Whether the policy of the legislature in thus constituting the commission was wise is not for our consideration. We cannot say that because the legislature thus constituted the commission its acts are on that account to be held fraudulent or arbitrary, or that they result in depriving claimants against the fund of any constitutional right. In any event, disregarding the question of the propriety of the plaintiff's challenge of the constitutionality of an act upon which it at the same time relies as a foundation for its claim (see Booth Fisheries Co. v. Industrial Commission, 271 U. S. 208, 70 L. ed. 908, 46 Sup. Ct. Rep. 491) we think that our holding in the Wirtz Case is conclusive against the constitutional objections here urged by the

plaintiff. In that case we held that a suit against the guaranty fund commission to establish a claim against the fund was in effect a suit against the state and that the state had not consented to be thus subjected to litigation. We arrived at that conclusion after extended consideration and discussion, and now upon a re-examination of the question we have no disposition to recede from the position there taken. So it seems clear to us that since the fund belongs to the state and the state has not consented to be sued, any rights which the plaintiff may have in the fund must be established in the manner prescribed by the legislature subject to any restrictions that the legislature may see fit to impose. "Whether the state should commit it (the fund) to the mere ministerial administration of the bank examiner and banking board, and subject them to controversies with depositors, or draw around them the circle of its immunity, was a matter within its competency to determine." Lankford v. Platte Iron Works Co. 235 U. S. 461, 59 L. ed. 316, 35 Sup. Ct. Rep. 173. The privilege of enjoying the benefits of the fund was conferred as a matter of grace. It could not be demanded as a matter of right. It was optional with the legislature whether any means should be provided whereby claims against the fund might be established, and so the legislature might prescribe such rules and regulations in that behalf as it deemed just and proper. Den ex dem. Murray v. Hoboken Land & Improv. Co. 18 How. 272, 15 L. ed. 372.

Plaintiff, however, insists that notwithstanding the interpretation thus put upon the Guaranty Fund Act, it is entitled to relief as prayed for in this action. Plaintiff's position is that the undisputed facts disclosed that it was the owner of general deposits not otherwise secured and not bearing excessive rates of interest, so there was no necessity for the exercise on the part of the commission of any judgment with respect to plaintiff's claims and, therefore, approval and allowance thereof were merely ministerial duties.

It is easy to state the rule defining the scope of the writ of mandamus; that is, that the writ will issue to compel official action but not to control official discretion in acting. This rule has been defined and applied by this court in numerous cases, the latest of which are Mogaard v. Garrison, 47 N. D. 468, 182 N. W. 758 and State ex rel. Howieson v. Fraser, 53 N. D. 909, 208 N. W. 397. A multitude of cases from

other jurisdictions illustrating the rule and its application might be cited, but this would be an unnecessary and fruitless labor. It is enough to refer to the decisions of the Supreme Court of the United States. As is said in the case of Louisiana v. McAdoo, 234 U. S. 627, 58 L. ed. 1506, 34 Sup. Ct. Rep. 938:

"There is a class of cases which hold that if a public officer be required by law to do a particular thing, not involving the exercise of either judgment or discretion, he may be required to do that thing upon application of one having a distinct legal interest in the doing of the act. Such an act would be ministerial only. But if the matter in respect to which the action of the official is sought is one in which the exercise of either judgment or discretion is required, the courts will refuse to substitute their judgment or discretion for that of the official intrusted by law with its execution. Interference in such a case would be to interfere with the ordinary functions of government. Marbury v. Madison, 1 Cranch, 137, 2 L. ed. 60; Kendall v. United States, 12 Pet. 524, 610, 9 L. ed. 1181, 1215; United States v. Schurz, 102 U. S. 378, 26 L. ed. 167, are examples of instances where the duty was supposed to be ministerial. Cases upon the other side of the line are Decatur v. Paulding, 14 Pet. 497, 514, et seq., 10 L. ed. 559, 567; Mississippi v. Johnson, 4 Wall. 473, 18 L. ed. 437; Cunningham v. Macon & B. R. Co. 109 U. S. 446, 27 L. ed. 992, 3 Sup. Ct. Rep. 292, 609; United States ex rel. Dunlap v. Black, 128 U. S. 40, 32 L. ed. 354, 9 Sup. Ct. Rep. 12; United States ex rel. International Contracting Co. v. Lamont, 155 U. S. 303, 39 L. ed. 160, 15 Sup. Ct. Rep. 97; Roberts v. United States, 176 U. S. 221, 44 L. ed. 443, 20 Sup. Ct. Rep. 376; United States ex rel. Riverside Oil Co. v. Hitchcock, 190 U. S. 316, 47 L. ed. 1074, 23 Sup. Ct. Rep. 698; United States ex rel. Ness v. Fisher, 223 U. S. 683, 56 L. ed. 610, 32 Sup. Ct. Rep. 356."

The difficulty in the case at bar, as in most of the cases, is not in the statement of the rule but in its application under the particular circumstances. Is the action here sought to be coerced ministerial? We cannot agree with the plaintiff that it is. The guaranty fund commission is an executive agency of the state charged with the administration of the act. The chief executive of the state is its chairman and the attorney general its legal advisor. The legislature reposed in

the commission alone the right to exercise discretion and judgment in administering the act and in applying the fund to the purposes for which it was created. See Wirtz v. Nestos, 51 N. D. 603, 200 N. W. 524. Though it be conceded there is no dispute as to the facts in the instant case, nevertheless, it was essential that the commission consider the evidence touching the transactions resulting in the alleged deposits and determine therefrom what in truth the facts were. The facts respecting any transaction are the facts whether or not there be a dispute in the evidence establishing them. The case or difficulty with which the facts may be ascertained can make no difference. If there must be investigation and decision there must likewise be the exercise of discretion and judgment. Though there be error in that exercise there can be no correction by mandamus, for thus the judgment of the court would be substituted for that of the commission in whom alone the right to exercise it is confided. If the commission arbitrarily or fraudulently refuse to act at all, it may well be that the writ of mandamus will issue to compel action, but that will be the extent of the mandate. We expressly held in the Wirtz Case that the commission must exercise legal discretion and judgment in passing upon claims against the guaranty fund and that such discretion could not be controlled or directed by the courts. It is true that we also said (by way of dictum) in that case that the commission must be answerable to the courts in case of fraudulent or arbitrary action or nonaction. However, this was merely a recognition of the general rule that action arbitrarily or fraudulently refused may be compelled, but that official discretion in acting can not be controlled, by the courts.

The plaintiff insists that by demurring to the petition defendants admitted that they had arbitrarily and fraudulently refused to act. We do not think that this contention is sustainable. It must be remembered that the demurrer is in fact a demurrer to the evidence and not an admission that the allegations set out in the pleadings constitute a true statement of the facts in the controversy. A full hearing was afforded before the commission. Evidence was taken. This was offered and received in order to enable the commission to exercise its discretion and pass its judgment as to the merits of the claims. The transcript of this evidence was attached to and made a part of the petition and must be considered in determining the effect of the de-

murrer. If the contention of the plaintiff is sustained the result will be that notwithstanding under the act the judgment and determination of the commission is made conclusive and final as to all matters touching the administration of the fund, as held in the Wirtz Case, nevertheless, judicial review of the commission's determination may be had by simply setting out in the petition for the writ a statement of the ultimate facts and conclusions as claimed, and attaching thereto a transcript of the evidence taken before the commission at its hearing. In such case, if plaintiff's contention be sustained, whether the statement of facts and conclusions is correct must be determined from the transcript of the evidence. If the court to whom the petition is addressed finds that the statement as thus made is sustained by the evidence, the writ will issue. If it is not sustained by the evidence it will be denied. Now here there is in the record no proof on which a finding can be made or from which a conclusion can be drawn that the action of the commission was fraudulent or arbitrary, unless it be that its determination is contrary to or unsupported by the evidence offered before it at the hearing. In other words, the fact, if it be the fact, that its ultimate conclusion was wrong is relied upon as a ground for invoking the mandatory powers of the court. Conceding, without deciding, that fraudulent or arbitrary action by the commission adverse to a claimant amounts in effect to a refusal to act at all, nevertheless, such a showing as is made in the petition is not enough. Mere error in judgment will not warrant a finding of caprice or fraud.

But, in any event, it seems to us that the case of State ex rel. Howieson v. Fraser, 53 N. D. 909, 208 N. W. 397, is conclusive against the right of the plaintiff to the writ in the instant case. There, as here, there was no dispute as to the facts. There the adjutant general was charged with the duty of administering the Soldiers' Bonus Act and empowered to pass upon claims presented against the fund thereby created, just as here the guaranty fund commission is charged with the duty of administering the Guaranty Fund Act and empowered to pass upon all claims presented against the guaranty fund. There is this difference between the Fraser Case and the instant case, a difference not in the plaintiff's favor. In the Fraser Case no transcript of evidence taken upon hearing was attached to and made a part of the petition. Here the evidence upon which the guaranty fund com-

mission acted was attached to and made a part of the petition. In the Fraser Case this court held that since the adjutant general was an executive officer to whom the legislature had intrusted the power to pass upon and finally allow or reject claims, the courts had no jurisdiction to review his determination in allowing or rejecting a claim against the fund sought to be charged. We can conceive of no logical reason for applying a different rule in the case at bar.

The order of the district court was right and is affirmed.

BIRDZELL, Ch. J., and BURKE, BURR, and CHRISTIANSON, JJ., concur.