STATE OF NORTH DAKOTA EX REL. A. G. SORLIE, Governor; C. R. Green, Manager of the Bank of North Dakota; C. B. McMillan and S. G. Severtson, Constituting the Depositors' Guaranty Fund Commission of the State of North Dakota, Appellants, v. FIRST NATIONAL BANK OF WHITMAN, NORTH DAKOTA, a National Banking Corporation, Formerly Lamb's Bank of Whitman, North Dakota, Respondent.

(224 N. W. 161.)

Opinion filed February 15, 1929.

*George A. Bangs,* for appellant.

*A. G. Divet,* for respondent.

NUESSLE, J. The plaintiffs in this action seek by mandamus to

compel the defendant, a national banking association, to make and file statements with the Guaranty Fund Commission showing its average daily deposits pursuant to the requirements of the present Depositors' Guaranty Fund Act, chapter 200, Sess. Laws 1923, as amended, (§§ 5220b1–5220b41, inclusive, 1925 Supplement to the Compiled Laws of North Dakota as amended). The case is here on appeal from a judgment of the district court quashing and setting aside the alternative writ and dismissing the proceeding.

The facts as they appear on the face of the record presented, so far as material, are as follows: Lamb's Bank of Whitman, North Dakota, was incorporated as a state banking association on May 4, 1912. On September 10, 1923, its capital was increased from $10,000 to $25,000; its surplus was $18,000. This bank took advantage of the Depositors' Guaranty Fund Act and was admitted under it in July, 1917. On November 20, 1923, a large number of banks had failed and the funds contemplated by and provided for under the act were insufficient to meet the demands occasioned by such failures. Consequently there were liabilities against the guaranty fund very greatly exceeding the amount then in the fund. On November 20, 1923, Lamb's Bank, pursuant to the provisions of § 5154, U. S. Rev. Stat. U. S. C. title 12, § 35, converted into a national bank and, as such, has continued to do business under the name of the First National Bank of Whitman, North Dakota. Its conversion was made without the authorization and approval of the Guaranty Fund Commission. Since the conversion the First National Bank of Whitman (the defendant) has at all times denied any liability under the Guaranty Fund Act and steadfastly refused to comply with the requirements of the act on the ground that by its conversion into a national bank it was relieved therefrom. It is conceded that all assessments made by the Guaranty Fund Commission prior to the date of the conversion on November 20, 1923, and all amounts that might have been assessed under the act to that date, have been paid and discharged.

The plaintiffs contend that the question presented by this appeal is whether a state banking association after conversion to a national bank under § 5154, U. S. Rev. Stat. is relieved from further obligations to the Depositors' Guaranty Fund for the liability of the fund arising out of the banks closed prior to such conversion. On the other hand, the

defendant denies that this question of ultimate liability is presented, and contends that it can only be raised and determined in a suit at law and that the question here is whether a national bank converted from a state bank under the provisions of said Section 5154 is thereafter subject to assessment upon its average daily deposits for the benefit of the guaranty fund.

In any event, it becomes necessary for us to examine the Guaranty Fund Act and determine the character and extent of the burdens and requirements imposed by that act. In doing this, we must assume, of course, that the legislature when it passed the act was mindful of the limitations upon its powers with respect to national banking corporations, as well as of the effect of conversion from a state to a national bank with respect to the latter's liability on the obligations of the former.

Section 5154, U. S. Rev. Stat. makes provision for the organization of state banks as national banking associations. No authority other than that conferred by this statute is required to enable a bank existing under a state law to convert into a national bank. Casey v. Galli, 94 U. S. 673, 24 L. ed. 168. And where a state bank is converted into a national bank the comptroller's certificate issued pursuant to the statute is conclusive as to the regularity of the proceedings by which the conversion is brought about. Ibid.; Keyser v. Hitz, 2 Mackey (D. C.) 473. There can be no controversy as to the effect of the conversion from a state to a national bank with respect to the obligations and liabilities of the state bank existing at the time of the conversion. The converted national bank is the same entity with a different name and, under a different jurisdiction and subject in the same manner and, to the same extent to all existing obligations and liabilities of the converting state bank. See Michigan Ins. Bank v. Eldred, 143 U. S. 293, 36 L. ed. 162, 12 Sup. Ct. Rep. 450; Metropolitan Nat. Bank v. Claggett, 141 U. S. 520, 35 L. ed. 841, 12 Sup. Ct. Rep. 60, 7 C. J. 760. Nor can there be any question but that a national bank as a creature and agency of the United States is subject to state regulation and state interference only in so far as is permitted by the laws of the United States. See First Nat. Bank v. Missouri, 263 U. S. 640, 68 L. ed. 486, 44 Sup. Ct. Rep. 213; First Nat. Bank v. California, 262 U. S. 366, 67 L. ed. 1030, 43 Sup. Ct. Rep. 602; 7 C. J. 760.

The plaintiffs largely predicate their contentions on this appeal upon the provisions of two sections of the present Guaranty Fund Act, to-wit:

Section 13, and particularly the last clause thereof, which section reads as follows:

"If any bank desires to go into voluntary liquidation or change to a National bank before the assessment provided for in section ten becomes due and payable, the provisions of this act shall not relieve said bank from the payment of any assessments then due from it to the Depositors' Guaranty Fund, nor from any liability to become due on account of losses in banks which are closed at the time such bank applies to liquidate or change into a National bank."

And § 29, which provides:

"If any bank organized under the laws of this state, having paid any assessment or assessments to the Depositors' Guaranty Fund shall liquidate and go out of business, or shall desire to organize as a national bank and withdraw from the protection of the Depositors' Guaranty Fund for its depositors the portion of such assessment or assessments, which shall not have been used under the provisions of this act shall be refunded to any bank by the Depositors' Guaranty Fund Commission. Provided, that no such bank shall be released from its proper proportion of all outstanding certificates of indebtedenss of the Depositors' Guaranty Fund, issued to the depositors of failed banks under the provisions of this act, nor until it shall have received permission in writing so to do from the Depositors' Guaranty Fund Commission of this state and after an examination of its condition."

—and particularly the final proviso therein. Plaintiffs insist that these provisions must be held to fix a definite continuing liability upon the banks operating under the Guaranty Fund Act to the extent of the outstanding obligations against the fund. Further, that if a bank operating under the fund converts into a national bank then the converted national bank is liable in the same manner as before conversion on account of all outstanding obligations against the fund at the date thereof and is subject to assessment, and to that end must make and file statements with the commission showing its average daily deposits as a basis therefor, in the same manner as before the conversion. The plaintiffs' theory in this regard is that there is a definite liability

against the state bank at the date of its conversion and that thereafter as a national bank, since it is the same corporate entity, it remains liable in the same manner and to the same extent as it was before as a state bank. Of course these sections must be read in connection with the other provisions of the act, and in view of its general scheme and purpose.

The Guaranty Fund Act is a regulatory measure. It was enacted pursuant to the police power of the state. It embodies a comprehensive scheme for the regulation of state banks and the protection of the depositors therein. It consists of thirty-nine sections. The fund created under its provisions is created for a governmental purpose through the exercise of the power of taxation. See Wirtz v. Nestos, 51 N. D. 603, 200 N. W. 524; Standard Oil Co. v. Engel, 55 N. D. 163, 212 N. W. 822.

As a regulatory measure the act contemplates that the Guaranty Fund Commission shall regulate going state banks and supervise the administration of insolvent state banks whose depositors participate in the guaranty fund. Its powers in this direction are exceedingly broad. It is required to become and keep informed as to the financial condition and management of all banks that have been admitted under the fund. It passes upon the eligibility of banks to come under the provisions of the act—and all state banks must come under its provisions. It is empowered to fix the rate of interest that a participating bank may pay upon its deposits. If the commission acquires information to the effect that any bank is irregularly, inefficiently or dishonestly conducted, or is insolvent, it must examine into the condition of such bank. It may require during such examination that all deposits' received be set aside and held intact as special deposits. If satisfied that the bank is insolvent it has power to institute proceedings to liquidate the bank and wind up its affairs. It may enforce the payment of assessments made by declaring the bank failing to pay insolvent, and liquidating and winding up its business as though it in fact were actually insolvent. It is empowered, in short, to do any and all of the things that may be or become necessary to insure the efficient working of the scheme of the act. None of these powers and functions thus delegated to the commission could be exercised and performed with respect to national banks. As a taxing measure the act contemplates that every bank

under its operation shall contribute to the guaranty fund in proportion as it has insurable deposits. It contemplates that not all deposits shall be insured, and that in determining the average daily deposits on which the assessments to make up the fund are based, deductions shall be made for those deposits which are not insured. The assessments are not based upon the amount of the capital stock of the banks or upon the value of their assets. No provision is made whereby, when a bank under the act liquidates either upon the expiration of its charter or prior thereto, any specific charge shall be made against its assets. There is no suggestion as to how any such charge shall be fixed. The act clearly contemplates that banks may liquidate and that when this is done there shall be no further responsibility to the fund. It just as clearly contemplates that state banks may convert into national banks and recognizes that its provisions can apply only to state banks. Nowhere does it make any distinction between liquidating banks and converting banks with respect to liability to the fund. Nowhere does it expressly provide that any bank converting into a national bank shall be chargeable with any definite proportion of the indebtedness existing against the fund. No provision is made whereby in such event any liability can or may be determined. No measure or basis for computation is even so much as suggested. The act contemplates that national banks may, when permitted by Federal statute or regulation, come under the fund subject to the permission and on conditions imposed by the Guaranty Fund Commission, and that if any national banks do come under the fund they may, in case of any Federal enactment requiring the payment by them of assessments to a Federal guaranty fund, withdraw from the state fund. It contemplates always that where there is a withdrawal from the fund, either by conversion or liquidation, the withdrawing bank shall receive from the fund such portion of the assessments paid by it as is not required to satisfy the then existing obligations against the fund. In short, the whole theory of the act is that the fund shall be created and maintained through assessments based upon the average daily deposits that are guaranteed by the fund. That is, the assessments are measured by the insurance provided. We can see no distinction between the case where a bank is liquidated and all its deposits are paid off and where a bank is converted and all of its deposits cease to be insured. In both cases alike, so far

as the fund is concerned, there are no deposits within the purview of the act.

The provisions of §§ 13 and 29 of the act heretofore quoted and referred to and on which the plaintiffs particularly rely, do not fix any definite liability upon liquidating or converting banks. Though these sections clearly recognize that ·banks operating under the act may liquidate or convert, they provide no basis or measure whereby such liability may be determined, and certainly nowhere else in the act is this done. In the nature of things such a liability cannot be definitely fixed unless some purely arbitrary basis for its determination be adopted. It is variable, depending upon a number of factors. It varies as a bank's insurable deposits vary; as the total insurable deposits of the whole number of banks operating under the act vary; as the obligations against the fund are increased through failure of additional banks; and as these obligations are diminished by dividends from banks that are insolvent. So in the absence of direct and clear words to that effect we cannot assume that the legislature intended to empower the Guaranty Fund Commission to arbitrarily fix and determine the proportion of the outstanding obligations against the guaranty fund which liquidating or converting banks should bear. Rather, the legislature in enacting these sections must have intended that before a bank might liquidate or convert, the question of the payment of its liabilities to the date of conversion should be passed upon and determined by the commission, and did not intend that the provisions of the act should continue in effect after liquidation or conversion, or that such bank should be subject thereafter to the authority and requirements of the commission. We therefore hold that where a bank operating under the guaranty fund liquidates or converts into a national bank all liability to the fund on account of future assessments ceases. It necessarily follows that after conversion of a state bank into a national bank the commission has no power to require it to file statements showing its average daily insurable deposits. Nor are we without authority from other jurisdictions tending to support such a construction. The Guaranty Fund Act of South Dakota, §§ 9005 to 9031, inclusive, South Dakota Revised Codes, 1919, is in essential particulars identical with the act under consideration in the instant case. Sections 9030 and 9015 thereof are identical with § 29 and § 13, respectively, of the

North Dakota act, supra, excepting as to the last clause of the latter section, to which reference has heretofore been made. A South Dakota bank desired to convert into a national bank. It made application for permission to do so pursuant to § 9030, supra. This permission was refused. Thereupon the bank sought by mandamus to compel the superintendent of banks to grant the application. The superintendent of banks resisted on the ground that there were outstanding certificates of indebtedness against the fund greatly in excess of the moneys therein and therefore the applicant bank ought not to be permitted to convert without making provision to secure the payment of its pro rata share of such outstanding obligations. The supreme court of South Dakota held that the liability on account of outstanding certificates not met by current assessments was not such as was properly chargeable against the applicant bank and that permission to convert must be granted. See Citizens' State Bank v. Smith, 50 S. D. 579, 210 N. W. 990. For a somewhat similar holding see also Citizens' Nat. Bank v. State, 76 Okla. 94, 184 Pac. 63.

In this case it appears that the defendant converted from a state into a national bank without having first received permission in writing so to do from the Guaranty Fund Commission as required by § 29 of the Guaranty Fund Act. The Federal statute provides for conversion from state to national banks and fixes the manner in which the conversion may be brought about. It designates the officer, the Comptroller of the Currency, who shall pass upon the matter. The defendant is now a national bank and functioning as such. That the conversion was made without the permission of the Guaranty Fund Commission can make no difference. The fact remains that it was made. A bank does not, chameleon like, change color to suit the circumstances or the views of different governmental agencies. The defendant cannot be a national bank when seen through the eyes of the Comptroller of the Currency and a state bank when viewed by the Guaranty Fund Commission. There are not two kinds of national banks. The defendant is either a national bank or a state bank. It must be one or the other. It cannot be both. The Federal authorities have said that it was a national bank, and it is operating as such. The Comptroller of the Currency has issued his certificate approving the conversion. He was the officer empowered by the Federal statute to pass upon and deter-

mine as to whether the conversion might be made. His decision is final and conclusive, especially as against collateral attack. As a national bank the defendant has not secured for its depositors the protection of the guaranty fund. It could not do so. They are not and never have been within the protection of the fund and there is no law authorizing a going national bank to be subjected to a liability to contribute to a fund that exists for the protection of a class of depositors from which its own are excluded. The intent plainly expressed in the law is that assessments for the fund shall be measured in every instance by the amount of current deposits protected by the fund and not by the whole amount of deposits, protected and unprotected. When none of the deposits in a particular bank are protected by the fund because the bank sustains no relation to the fund, it is obvious that no assessment can be levied and that it would be an idle ceremony to require a statement to be filed. That is the case here. There is nothing for the commission to determine. Mandamus will not issue to compel the performance of an idle act.

The judgment of the district court is affirmed.

BURKE, Ch. J., and CHRISTIANSON and BIRDZELL, JJ., concur.

BURR, J. (dissenting). It is conceded that if a bank be subject to the provisions of the Depositors' Guaranty Fund and the bank neglects to file "a statement in writing verified by the oath of its president, vice-president, or cashier, showing the average daily deposits in its bank for the preceeding twelve (12) months" a writ of mandamus will issue to compel the furnishing of such statement, so we need not worry about the method of procedure.

It is said that the defendant bank is not subject to the provisions of this law because though originally a state bank it has changed into a national bank: that a national bank carries no insurable deposits unless such national bank has "been permitted to avail its depositors of the protection of the Depositors' Guaranty Fund" either "by the act of Congress, or by decision of the Federal court, or departmental construction of the national banking act;" that this defendant bank has not been permitted to avail its depositors of this protection and there-

fore has no insurable funds; and that the provision of this law cannot apply in general to national banks.

It must be conceded that at the time this state bank changed to a national bank there was a certain and definite indebtedness due depositors of closed banks from the Depositors' Guaranty Fund, and the defendant was liable for its share. While by the provisions of law the annual rate of the assessment is limited, and the amount of annual assessment to be paid and which is available for the liquidation of this indebtedness is more or less uncertain, yet it must be conceded that owing to the limitation of the assessments this indebtedness can not be discharged for many years, as the liability is a continuing one.

The statute provides a guaranty fund for the protection of depositors in state banks and it is obligatory on all state banks to contribute to this fund. It is not a matter of option on the part of a state bank as it may be on the part of a national bank. All banks, state or national, which avail their depositors of the protection of this fund must file this statement in writing on the 30th day of June of each year. This statement must specify all kinds of deposits—insurable and non-insurable. Even where the bank may be of the opinion that certain funds held by it are not "eligible to guaranty under the provisions of this act" it must set these facts forth in the statement. Even where a bank has given security for deposits other than the provision of the Depositors' Guaranty Fund law, or has promised or paid a rate of interest in excess of the rate limited by the act nevertheless it must make a return on those deposits. See § 5220b11. It is for the commission to determine in the first place what deposits are insured. This is the plain intent of the law. To permit the bank to determine for itself might result in such restricted report that the amount of the premium would be materially lessened. It is not for the bank to pass on the "eligibility" of its deposits, otherwise it could diminish the amount of assessment which it is required to pay. It is the commission which passes upon this fact, not the bank. Hence the question of the insurability of the funds, is not determined by the bank itself.

Section 5220b14 of the 1925 *Supp.* to the Comp. Laws of 1913 clearly contemplates a continuing liability even where banks "go into voluntary liquidation or change to a national bank." It is true the exact amount for which such bank is liable may not be known at the time

of voluntary liquidation or at the time of change to a national bank but the liability is there. The amount of assessment may vary but the amount to be paid by all banks is known though the individual bank may not know its proportionate share. Therefore at the time of the change to a national bank there was a certain defined liability. We are not concerned here with the method or lack of method for compelling a liquidating bank to contribute its just share.

It will be noted this is not an attempt to compel a bank, originally organized as a national bank, to contribute to the fund. This is the attempt of a state bank, converting into a national bank without the consent of the Depositors' Guaranty Fund Commission, to evade its responsibilities under the law and to escape the payment of its just share of the liability. The majority opinion realizes this but holds the legislature has provided no remedy hence the court is powerless to prevent it. It is true that after a state bank has been converted into a national banking association it may cease to exist as a state bank. But though it "becomes a national bank and its name is changed accordingly, this does not affect its identity." In Michigan Ins. Bank v. Eldred, 143 U. S. 293, 36 L. ed. 162, 12 Sup. Ct. Rep. 450, plaintiff sued under its state name and not its converted name. It was argued the state bank had gone out of existence but the court held the corporate existence was not destroyed. Then, again all the liability against the state bank still exists and this converted bank is liable for all the debts and obligations contracted by the state bank. Metropolitan Nat. Bank v. Claggett, 141 U. S. 520, 35 L. ed. 841, 12 Sup. Ct. Rep. 60; Michigan Ins. Bank v. Eldred, supra.

If the stockholders had organized a national bank and liquidated the state bank, returning the deposits and going out of business, we would have a different situation entirely; but here we have the same institution, same insured deposits, same business carried on, but under a different name yet liable for the same debts. This national bank therefore is liable for the debts and other obligations which the bank itself created while it was operating as a state bank. They are its own debts.

Because a banking institution is organized under a national banking act and is known as a national bank does not say that the state has no power over it. It was not the intention of Congress to permit such an institution to enter a state, transact business therein, avail itself of

the protection of the state and under no circumstances be under the supervision or control of the state. This is no new doctrine. In First Nat. Bank v. Kentucky, 9 Wall. 353, 359, 19 L. ed. 701, 703 it is said:

"It is argued that (national) banks, being instrumentalities of the Federal Government, by which some of its important operations are conducted cannot be subjected to such state legislation. . . . The principle we are discussing has its limitation, a limitation growing out of the necessity on which the principle itself is founded. That limitation is, that the agencies of the Federal government are only exempted from state legislation so far as legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve that government. Any further rule would convert a principle founded alone in the necessity of securing to the government of the United States the means of exercising its legitimate powers, into an unauthorized and unjustifiable invasion of the rights of the states. . . . They (National banks) are subject to the laws of the state and are governed in their daily course of events far more by the laws of the state than of the nation. All their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts are all based on state law. It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional."

See also Guthrie v. Harkness, 199 U. S. 148, 50 L. ed. 130, 26 Sup. Ct. Rep. 4, 4 Ann. Cas. 433. The Federal Government is not a party to repudiation nor an assistant in the defiance of state law.

It is true that the conversion of a state bank into a national bank is done under the authority of the national bank act and that no authority other than that which is conferred by Congress is required. Casey v. Galli, 94 U. S. 673, 24 L. ed. 168. It will also be conceded, as the majority opinion states, that when the Comptroller of the Currency issues "his certificate approving the conversion, the regularity of such conversion cannot be challenged in a collateral proceeding, though the conversion was made without the state bank having received permission in writing from the Depositors' Guaranty Fund Commission as required by § 29 of the Guaranty Fund Act." Nevertheless this does not decide the issue. So far as this bank, formerly a state bank

and now a national bank, is concerned, the state still demands it pay its liabilities. It, together with other state banks, is liable for the debt and its annual payment on the deficit is determined by the amount of its deposits, which would be received as a state bank determined by the commission and according to a certain specified rate.

It is said the depositors are not insured. We must remember this is not the case of a bank incorporated originally as a national bank. If it were there might be good reason for saying its deposits are not insured. This is a case of a state bank still operating but operating now under the national bank system. The national bank act recognizes the distinction between the two classes. Just as our state law makes provision for a national bank to convert into a state bank, so the Federal act provides for a state bank converting into a national bank. In each case the converted bank is somewhat different from a bank which was organized originally as a state bank or national bank as the case may be. So far as the settlement of liabilities is concerned a converted state bank is still a state bank. We are not concerned with the difficulties which arise between the bank and its depositors. If the bank be in a dilemma through its defiance and evasion of the state law that is its concern. So far as the liability is concerned and the payments the state considers its deposits as the deposits of a state bank. It must be admitted that if the deposits are insured deposits the bank can be commanded to make this statement but the question of whether they are insured deposits is not to be determined by the bank itself. We may concede that the state bank, in defiance of the laws of this state, has become converted into a national bank without receiving the consent of the Depositors' Guaranty Fund Commission. But surely it cannot be permitted to evade its liability for this reason. It may be that it has complicated the rights of its depositors by this unauthorized act but that is a matter between it and its depositors. There is nothing to indicate that the commission refuses to give protection to its depositors; there is provision made for protection of such depositors. We cannot assume that the commission will insist upon the bank shouldering its share of the liability, and discharging its legal duties and at the same time deny the corresponding rights and privileges. That is not involved here. As said before our law makes provision for national banks taking ad-

vantage of the law and having its deposits insured, and the commission may well consider that where a state bank converts to a national bank it is done with full knowledge of liability, no intent to evade, and a desire to avail its depositors of the benefit of the act. Hence the commission would not deny the privilege. If it could allow the privilege in one case, it would in another.

While the Federal law permits a state bank to become a national bank it never contemplated that the state bank should thus evade a responsibility nor was it intended to be a cover for repudiation of debt. Hence, I dissent.